1
2
3
4
5

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

Case No. 14-CV-03122(VEB)

HEATHER MARTINEZ,

              Plaintiff,

DECISION AND ORDER

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

           Defendant.

## I. INTRODUCTION

In May of 2011, Plaintiff Heather Martinez applied for Supplemental Security
Income ("SSI") benefits under the Social Security Act. The Commissioner of Social
Security denied the application.

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On March 2, 2015, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 18).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits on May 17, 2011, alleging disability since July 1, 2009. (T at 168-74).[1]   The application was denied initially and on reconsideration and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On January 23, 2013, a hearing was held before ALJ Tom Morris. (T at 34).  Plaintiff appeared with her attorney and testified. (T at 42-43, 45-65). The ALJ also received testimony from Paul Prachyl, a vocational expert (T at 41-42, 44, 65-72).

---

[1] Citations to ("T") refer to the administrative record at Docket No. 11.

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

On February 22, 2013, the ALJ issued a written decision denying the application and finding that Plaintiff was not entitled to benefits. (T at 16-33). The ALJ's decision became the Commissioner's final decision on June 26, 2014, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

On August 26, 2014, Plaintiff, acting by and through her counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 4). The Commissioner interposed an Answer on November 3, 2014. (Docket No. 10).

Plaintiff filed a motion for summary judgment on February 2, 2015. (Docket No. 14). The Commissioner moved for summary judgment on February 18, 2015. (Docket No. 17). Plaintiff filed a reply brief on March 30, 2015. (Docket No. 20).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for calculation of benefits.

## III. DISCUSSION

**A.     Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

activity and (2)  a "significant number of jobs exist in the national economy" that

plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's

decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision,

made through an ALJ, when the determination is not based on legal error and is

supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.

1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's]

determination that a plaintiff is not disabled will be upheld if the findings of fact are

supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla,

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a

preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

Substantial evidence "means such evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner]

may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*,

348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a

whole, not just the evidence supporting the decision of the Commissioner. *Weetman*

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

*v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**C.    Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 17, 2011 (the application date).  The ALJ found that Plaintiff's fibromyalgia, diabetes mellitus, obesity, affective disorders, and anxiety disorders were "severe" impairments under the Act. (Tr. 21).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

1    However, the ALJ concluded that Plaintiff did not have an impairment or

2    combination of impairments that met or medically equaled one of the impairments

3    set forth in the Listings. (T at 22).

4        The ALJ determined that Plaintiff retained the residual functional capacity

5    ("RFC") to perform light work, as defined in CFR § 416.967 (b), except that she was

6    limited as follows: frequent ramp/stair climbing, with occasional climbing of

7    ladders, ropes or scaffolds; simple routine tasks with customary breaks and lunch; no

8    contact with the public for work tasks; occasional contact with coworkers for work

9    tasks; low stress work (defined as work with no more than occasional decision-

10   making). (T at 23).

11       The ALJ noted that Plaintiff had no past relevant work. (T at 27).  Considering

12   Plaintiff's age (31 on the application date), education (limited), work experience,

13   and residual functional capacity, the ALJ determined that there were jobs that exist

14   in significant numbers that Plaintiff can perform. (T at 28).  As such, the ALJ

15   concluded that Plaintiff was not disabled, as defined under the Social Security Act,

16   between May 17, 2011 (the application date) and February 22, 2013 (the date of the

17   decision) and was therefore not entitled to benefits. (Tr. 28).  As noted above, the

18   ALJ's decision became the Commissioner's final decision when the Appeals

19   Council denied Plaintiff's request for review. (Tr. 1-4).

20

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

**D.    Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) main arguments. First, she contends that the ALJ did not properly weigh the medical evidence. Second, Plaintiff challenges the ALJ's credibility determination. Third, Plaintiff argues that the ALJ's step five analysis is flawed. This Court will address each argument in turn.

## IV. ANALYSIS

**A.    Medical Evidence**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

### 1.    Mary Day

In October of 2011, Mary Day, Plaintiff's treating mental health therapist, completed an evaluation report in which she noted that Plaintiff was diagnosed with major depressive disorder (recurrent, severe, without psychotic features) and panic disorder with agoraphobia. (T at 477).   She reported that Plaintiff's anxiety significantly impaired her ability to concrete and interact with others. (T at 477). Ms. Day opined that Plaintiff's panic/agoraphobia "may impair" her ability attend therapy appointments. (T at 478).

Ms. Day completed another mental residual functional capacity assessment in January of 2012.  She opined that Plaintiff had marked limitations with regard to her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (T at 370).   She also

assessed marked limitations with respect Plaintiff's ability to work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, travel in unfamiliar places or use public transportation, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T at 371-72).

In a report completed in June of 2012, Ms. Day noted Plaintiff's diagnosis of major depressive disorder (recurrent, severe, without psychotic features) and panic disorder with agoraphobia. (T at 474).  She opined that Plaintiff's panic disorder significantly limited her ability to "tolerate public places" and "keep appointments." (T at 474).   In addition, Plaintiff's mood disorder impacted her attention and concentration, organization, task completion, and interactions with others. (T at 474).  Ms. Day noted that Plaintiff's panic disorder with agoraphobia prevented her from maintaining consistent attendance at her therapy appointments. (T at 475).

In evaluating a claim, the ALJ must consider evidence from the claimant's medical sources. 20 C.F.R. §§ 404.1512, 416.912. Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 404.1502. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 404.1502. Medical sources classified as "not acceptable" (also known as

"other sources") include nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p.   The opinion of an acceptable medical source is given more weight than an "other source" opinion. 20 C.F.R. §§ 404.1527, 416.927.   For example, evidence from "other sources" is not sufficient to establish a medically determinable impairment. SSR 06-03p.  However, "other source" opinions must be evaluated on the basis of their qualifications, whether their opinions are consistent with the record evidence, the evidence provided in support of their opinions and whether the other source is "has a specialty or area of expertise related to the individual's impairment." *See* SSR 06-03p, 20 CFR §§404.1513 (d), 416.913 (d).   The ALJ must give "germane reasons" before discounting an "other source" opinion. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ assigned little weight to Ms. Day's assessments.   In particular, the ALJ found the narrative portion of Ms. Day's January 2012 assessment illegible (the remainder of the assessment was in the nature of a "checkbox" form). Thus, because the ALJ could not access the narrative portion of the therapist's evaluation, he "presume[d]" that Ms. Day relied "mostly, if not entirely, on [Plaintiff's] subjective complaints."   In addition, the ALJ noted that Plaintiff terminated services with Ms. Day in August of 2012, which the ALJ believed was not consistent with marked restrictions. (T at 26).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

1    This Court finds that the ALJ did not provide "germane reasons" before

2    discounting Ms. Day's assessments.  Plaintiff attended weekly mental health therapy

3    sessions with Ms. Day starting in October 2011 and concluding in August 2012,

4    which gave Ms. Day an extended opportunity to observe and assess Plaintiff's

5    mental health status.  (T at 52-53, 373-472).  Contrary to the ALJ's conclusion, the

6    narrative in Ms. Day's January 2012 report, while difficult to read, is not illegible.

7    In that narrative, Ms. Day described limitations in Plaintiff's ability to remember and

8    follow directions and read/recall information, (T at 272).  She also noted fluctuations

9    in Plaintiff's depressed mood. (T at 272).

10    Moreover, even if the ALJ believed Ms. Day's narrative was illegible, it was

11    error to then adopt a "presumption" that her assessment was based primarily on

12    Plaintiff's subjective reports. (T at 26).  If the ALJ believed the evidence was

13    ambiguous because of his difficulty in deciphering the therapist's handwriting, the

14    proper response was to re-contact the therapist, rather than adopting a "presumption"

15    unfavorable to Plaintiff.  *See* 20 C.F.R. § 404.1512(e)(1); S.S.R. 96-5p, 1996 SSR

16    LEXIS 2 (1996); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) ("In Social

17    Security cases the ALJ has a special duty to fully and fairly develop the record and

18    to assure that the claimant's interests are considered."); *Sims v. Apfel*, 530 U.S. 103,

19    110-11, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) ("Social Security proceedings are

20

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

1  inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and
2  develop the arguments both for and against granting benefits . . . .").

3      In addition, the ALJ concluded that the fact that Plaintiff terminated services
4  with Ms. Day in August 2012 was "not consistent with [the] marked restrictions"
5  assessed by Ms. Day. (T at 26).  Before reaching such a conclusion, the ALJ was
6  obliged to consider carefully "information in the case record that may explain
7  infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-
8  7p.  Here, Ms. Day noted repeatedly that Plaintiff's panic disorder was a serious
9  barrier to her ability to consistently access treatment. (T at 395, 396-97, 413, 414-15,
10  474-76, 478).  The ALJ was not necessarily bound to accept this explanation for
11  Plaintiff's termination of treatment, but he was obliged to consider it carefully.  The
12  ALJ's conclusory statement that the discontinuance of treatment was "not consistent
13  with marked restrictions" (T at 26) was insufficient to satisfy this standard.  Further,
14  as a general matter, "it is a questionable practice to chastise one with a mental
15  impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v.*
16  *Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)(quoting *Blankenship v. Bowen*, 874
17  F.2d 1116, 1124 (6th Cir.1989)).

18      The ALJ also found that Plaintiff's "ability to attend medical appointments
19  without incident and complete her daily activities" contradicted Ms. Day's

20

assessments of marked limitations. (T at 26). However, the conclusion that Plaintiff attended her appointments "without incident" is flatly contradicted by the record.[2] As noted above, Ms. Day opined that Plaintiff's panic disorder interfered with her ability to attend therapy sessions. (T at 395, 396-97, 413, 414-15, 474-76, 478). The record documented several missed appointments due to mental health symptoms. (T at 413, 415, 565). For example, in February of 2012, Plaintiff called Ms. Day and reported that agoraphobia and depression continued to "keep me in the house, just couldn't get myself out today." (T at 413). Ms. Day reported that Plaintiff was "struggling with anxiety that is barrier to attending sessions," although Plaintiff was "willing to use adaptive strategies." (T at 413). In addition, because Plaintiff became anxious about the "crowd" in the waiting room, Ms. Day suggested that she wait in her car until her appointment time and call support staff to advise them of her arrival. (T at 396). Plaintiff would often drive around Ms. Day's office, "scoping out" the parking lot, filled with anxiety about her appointment. (T at 364, 398). The ALJ made no effort to reconcile this evidence with his conclusion that Plaintiff attended medical appointments "without incident." (T at 26). In addition, although

---

[2] It is worth noting that the ALJ cites Plaintiff's participation in therapy as evidence of non-disability and then discounts the credibility of her claim because she terminated therapy. In other words, when Plaintiff attends therapy it is considered evidence of non-disability and when she does not attend therapy it is also deemed evidence of non-disability.

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

the ALJ discounted Ms. Day's opinion based on Plaintiff's purported ability to attend medical appointments "without incident," he discounted Plaintiff's credibility by citing her "inconsistent attendance" at such appointments. (T at 24-25).

The ALJ also felt Plaintiff's activities of daily living were inconsistent with Ms. Day's assessment of marked limitations. However, these activities (grocery shopping, running errands, taking daily walks, and engaging in "pleasurable activities"), (T at 26) are relatively limited in nature and required significant support. For example, Plaintiff has difficulty leaving her home and her daughter does the majority of grocery shopping. (T at 51).

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held that "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)(citations omitted); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)).

Critically, given the diagnosis of anxiety disorder (which the ALJ recognized as a severe impairment) the ALJ should have considered very carefully the limitations Ms. Day assessed with regard to Plaintiff's ability to handle the stress demands of competitive, remunerative work activity. Stress is "highly individualized" and a person with a mental health impairment "may have difficulty meeting the requirements of even so-called 'low-stress' jobs." SSR 85-15. As such,

17

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

the issue of stress must be carefully considered and "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." *Id.*; *see also Perkins v. Astrue*, No. CV 12-0634, 2012 U.S. Dist. LEXIS 144871, at *5 (C.D.Ca. Oct. 5, 2012).   The ALJ's consideration of Ms. Day's assessment did not satisfy this standard for the reasons outlined above.

### 2.    Dr. Udell

Dr. Mindy Udell has been Plaintiff's primary care physician since she was 15 years old. (T at 361).   In January of 2010, Dr. Udell opined that Plaintiff's fibromyalgia and depressive disorder limited her ability to concentrate, interact with people, and perform exertional activities (i.e. lift more than 5 pounds, stand for longer than 5 minutes, and sit for more than 30 minutes). (T at 485).   She concluded that Plaintiff was unable to work. (T at 485).

In April of 2011, Dr. Udell reported that Plaintiff's fibromyalgia limited her physical ability to work and her depression limited her ability to maintain a job and attend to follow-through. (T at 221).   She opined that Plaintiff was limited to lifting 10 pounds, but could frequently lift or carry files and small tools and could sit, walk, and stand for brief periods. (T at 222).   In August of 2011, Dr. Udell again opined

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

that Plaintiff's fibromyalgia limited her physical ability to work and her depression limited her ability to maintain a job and attend to follow-through. (T at 224).

The ALJ assigned little weight to Dr. Udell's assessments, finding her conclusions inconsistent with Plaintiff's "ability to attend medical appointments without incident and complete her daily activities." (T at 26).   This conclusion is not supported by substantial evidence.   As noted above, the ALJ's finding that Plaintiff attended medical appointments "without incident" is not consistent with the evidence.   The ALJ's statement that Plaintiff's activities of daily living contradict the limitations assessed by Dr. Udell is conclusory.   In other words, the ALJ does not explain how or why those activities contradict Dr. Udell's findings.   The ALJ also does not appear to have accounted for the fact that Plaintiff was able to perform her limited activities of daily living with family support and free from the demands of maintaining a regular schedule, meeting deadlines, and handling the stress of competitive employment.

The ALJ also stated that Dr. Udell failed to provide "objective testing or other evidence to support the findings." (T at 26).  However, the record contains numerous treatment notes that support Dr. Udell's assessments. (T at 265, 267, 317, 332, 337, 542).  The Commissioner contends that the ALJ properly discounted Dr. Udell's opinions because the physician did not make specific reference to her treatment

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

1   notes and history in her assessments.  However, the Commissioner offers no support

2   for the suggestion that Dr. Udell should be presumed to have ignored her (lengthy)

3   treating history when rendering opinions regarding the nature and extent of

4   Plaintiff's limitations.    Moreover, the Ninth Circuit has held that a treating

5   physician's failure to specifically reference or annotate the treatment history in her

6   assessments is not a proper basis for discounting those assessments. *See Burrell v.*

7   *Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014)("Indeed, Dr. Riley's assessments are of

8   the 'check-box' form and contain almost no detail or explanation. But the record

9   *supports* Dr. Riley's opinions because they are consistent both with Claimant's

10   testimony at the hearing and with Dr. Riley's own extensive treatment notes which,

11   as discussed above, the ALJ largely overlooked.")(emphasis in original).

12        The ALJ also noted that in July of 2009, Dr. Udell reported that Plaintiff's

13   condition did not meet "at least 11 of the 18" pressure points for the fibromyalgia

14   criteria, which the ALJ found contradicted her opinion that Plaintiff's fibromyalgia

15   symptoms restricted her ability to work. (T at 26).  However, the ALJ does not

16   explain how the pressure point finding actually contradicts Dr. Udell's assessments.

17   This omission is of particular relevance since the ALJ accepted the diagnosis of

18   fibromyalgia and found it was a severe impairment. (T at 21).  In addition, the

19   "tender points" or "pressure points" test is not the exclusive method of diagnosing

20

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

fibromyalgia. *See* SSR 12-2p.   As such, having accepted the diagnosis of fibromyalgia and having recognized it as a severe impairment, the ALJ was obliged to at least explain why Dr. Udell's "pressure points" finding nevertheless provided a basis for discounting her opinion.

Lastly, the ALJ appears to have considered the assessments of Dr. Udell and Ms. Day in isolation, *i.e.* without considering the fact that they were mutually supporting.   In other words, the ALJ discounted both opinions as inadequately supported by the record without (apparently) considering the fact that they were consistent with each other.   This omission was significant given the extensive treatment history both providers had with Plaintiff (and thus the opportunity both had for observations of Plaintiff over an extended period of time).

For the foregoing reasons, this Court finds that the decision to discount the opinions of Dr. Udell and Ms. Day cannot be sustained.

## B.   Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, Plaintiff testified as follows: She is 5' 3" tall and weighs 265 pounds. (T at 45). She takes her medication as prescribed and testified that she has always done so. (T at 50). Fibromyalgia and anxiety prevent her from working. (T at 50). Being in a public place causes severe panic attacks. (T at 51). The prospect of being in an unfamiliar place fills her with dread and makes it difficult to leave her home. (T at 51). Plaintiff's daughter does most of her grocery shopping. (T at 51). Trying to leave the house more frequently causes an increase in her symptoms. (T at 52). Plaintiff tries to stay at home unless she absolutely needs to leave. (T at 52). Her stress also causes knee pain and makes it difficult to get up and move around. (T at 54). She has trouble sleeping and experiences feelings of guilt and worthlessness. (T at 55). Her mind is "constantly running," which makes it difficult to concentrate. (T at 56). Reading and sitting through a movie are difficult. (T at 56). She does not believe she is emotionally or physically stable enough to hold down a job. (T at 57). During the day, Plaintiff listens to the radio, does cleaning, and cares for her four-

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

1    year old daughter. (T at 60).  She recently moved and was changing mental health

2    providers; her last therapy session was six months prior to the hearing. (T at 65).

3         The ALJ found that Plaintiff's medically determinable impairments could

4    reasonably be expected to cause some of the alleged symptoms, but that her

5    statements concerning the intensity, persistence, and limiting effects of the

6    symptoms were not fully credible. (T at 24).

7         This Court finds that the ALJ's credibility assessment is not supported by

8    legally sufficient evidence.  The ALJ found Plaintiff's testimony not "reasonably

9    consistent with the medical evidence." (T at 23).  However, as outlined below,

10   Plaintiff's claims were supported by assessments from her treating physician (Dr.

11   Udell) and mental health therapist (Ms. Day), both of whom had the opportunity to

12   observe and evaluate Plaintiff over an extended period of time.  The

13   contemporaneous treatment notes support Plaintiff's claims of frequent panic

14   attacks, depression, and agoraphobia. (T at 317, 322, 357, 398, 400).  The ALJ

15   faulted Plaintiff for non-compliance with doctor recommendations regarding diet,

16   blood sugar monitoring, and exercise (T at 24), but did not address the impact that

17   Plaintiff's (undisputed) mental health issues had on her ability to exercise the

18   necessary discipline to make these lifestyle changes. (T at 317).  This was error

19   under SSR 96-7p*; see also Dean v. Astrue*, No. CV-08-3042, 2009 U.S. Dist. LEXIS

20

62789, at *14-15 (E.D. Wash. July 22, 2009)(noting that "the SSR regulations direct the ALJ to question a claimant at the administrative hearing to determine whether there are good reasons for not pursuing medical treatment in a consistent manner").

The ALJ also cited Plaintiff's "inconsistent attendance" at her medical appointments as another factor that "erode[d]" her credibility. (T at 24-25). However, the ALJ did not reconcile this conclusion with Ms. Day's finding that Plaintiff's severe anxiety was a "barrier to attending sessions." (T at 413).  In addition, as discussed above, on the one hand, the ALJ discounted Plaintiff's credibility based on inconsistent attendance at appointments, but then discounted the assessments of Dr. Udell and Ms. Day because of Plaintiff's purported "ability to attend medical appointments without incident . . . ." (T at 26).  The ALJ does not explain these inconsistent conclusions.

Lastly, the ALJ also noted that "[s]econdary gain issues may also be present." (T at 25).  In particular, the ALJ noted that Plaintiff had a limited work history, financial stressors as a result of being a single mother, and relied on referrals to food banks and charitable resources to provide for her family. (T at 25).  The ALJ found that these concerns "suggest[ed]" that Plaintiff "could be attempting to portray more extensive limitations than are actually present in order to increase the chance of obtaining benefits." (T at 25).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

However, no treating provider suggested malingering or symptom exaggeration. The ALJ recognized that Plaintiff suffers from severe impairments, including anxiety disorder. Plaintiff alleges that she suffers from debilitating impairments (including difficulty even leaving her house), which render her unable to work. It would be surprising indeed if Plaintiff did *not* have financial problems. Plaintiff is seeking Social Security benefits to ameliorate the financial burdens caused by her inability to work. This hardly makes her unique among claimants and, indeed, this is the very purpose of having a system that provides such benefits in the first place. Absent affirmative indications of malingering or symptom exaggeration, it is not proper to discount a claimant's credibility for trying to obtain SSI benefits for their intended purpose. *See Edgar v. Astrue*, No. 08-6379-AC, 2010 U.S. Dist. LEXIS 69226, 2010 WL 2730927, at *5 (D. Or. June 2, 2010) ("The ALJ may not chastise a claimant for seeking disability benefits payments; such reasoning circumvents the very purpose of disability benefit applications"); *Walker v. Colvin*, No. CV 12-2248, 2013 U.S. Dist. LEXIS 46260, at *18-19 (C.D.Ca. Mar. 28, 2013)("[B]eing under 'financial pressure' is not a legitimate reason for disbelieving plaintiff's subjective allegations.").

This Court accordingly finds that the ALJ's credibility determination cannot be sustained.

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

## C.   Step Five Analysis

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs*., 815 F.2d 1275, 1279 (9th Cir.1987).  "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the ALJ's step five analysis relied on the testimony of Paul Prachyl, a vocational expert.  (T at 28). However, the hypothetical questions presented to the vocational expert by the ALJ assumed a claimant able to perform low stress work on

a consistent basis, without public contact with the public. (T at 65-69).  When asked whether a hypothethical claimant with limitations similar to those assessed by Dr. Udell and Ms. Day could perform any competitive work, the vocational expert said no. (T at 70-71).  As outlined above, the medical evidence demonstrated the Plaintiff could not consistently demonstrate the ability to handle the stress demands of competitive, remunerative work and, in fact, would likely experience marked panic attacks and other difficulties if required to attend to the changes and other demands of regular work activities.  Accordingly, the opinion of the vocational expert has no evidentiary value and cannot support the ALJ's conclusion.

## C.   Remand

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In contrast, an award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).   Courts have

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

1   remanded for an award of benefits where (1) the ALJ has failed to provide legally

2   sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that

3   must be resolved before a determination of disability can be made, and (3) it is clear

4   from the record that the ALJ would be required to find the claimant disabled were

5   such evidence credited. *Id.* (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th

6   Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of*

7   *Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988)).

8         Here, this Court finds that a remand for calculation of benefits is the

9   appropriate remedy.   The treating physician and mental health therapist both

10  assessed significant limitations.   Their opinions were supported by the treatment

11  history and consistent with Plaintiff's testimony, which was improperly discounted.

12  Although the ALJ referenced assessments by non-examining State Agency review

13  consultants that supported his determination (T at 27), this does not constitute

14  substantial evidence sufficient to override the treating providers' opinions or

15  otherwise sustain the ALJ's decision.   *See Lester v. Chater*, 81 F.3d 821, 831 (9th

16  Cir. 1995)(citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)). There are

17  no outstanding issues that must be resolved before a determination of disability can

18  be made.

19

20

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB

1

2                                        **IV. ORDERS**

3    IT IS THEREFORE ORDERED that:

4         Plaintiff's motion for summary judgment, Docket No. 14, is **GRANTED**.

5         The Commissioner's motion for summary judgment, Docket No. 17, is

6    DENIED.

7         This case is remanded for calculation of benefits,

8         The District Court Executive is directed to file this Order, provide copies to

9    counsel, enter judgment in favor of Plaintiff, and **CLOSE** this case.

10        DATED this 27th day of July, 2015.

11

12                                        /s/Victor E. Bianchini
                                          VICTOR E. BIANCHINI
13                              UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20                                          29

     DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03122-VEB